UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MATTHEW LUKER, on behalf of
himself and on behalf of all
others similarly situated,**

     **Plaintiffs,**

**v.**                     **CASE NO:  8:19-cv-01448-WFJ-JSS**

**COGNIZANT TECHNOLOGIES
SOLUTIONS U.S. CORPORATION,**

     **Defendant.**

_____/

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

Mathew Luker ("Luker" or "Plaintiff") and Cognizant Technology Solutions US Corporation ("Cognizant" or "Defendant") have settled this class/collective action lawsuit, which seeks unpaid wages on behalf of Plaintiff and approximately 330 other process executives who worked on two customer accounts at Cognizant's Contact Center in Tampa, Florida (the "Center") during the past three years.  Contingent on the Court's approval, $290,000 in settlement proceeds will be distributed as follows:  (i) $173,144.44 will be paid to the process executives, (ii) a $10,000 service award will be paid to Plaintiff; (iii) $10,188.89 will be paid to Plaintiffs' counsel for out-of-pocket litigation expenses, and (iv) $96,666.67 will be paid to class counsel to cover attorney's fees.

As discussed below, the Court "should direct notice in a reasonable manner" of the settlement to the class/collective members because, at the final approval state, the Court "will likely be able to" (i) grant final approval of the settlement under the criteria described in the Federal Rule of Civil Procedure ("Civil Rule") 23(e)(2) and (ii) certify the settlement class.  See Fed. R.

1

Civ. P. 23(e)(1)(B)(i)-(ii). Also, the Court should approve the class notice form and protocols because they constitute the "best notice that is practicable" under Civil Rule 23(c)(2)(B), and should appoint the undersigned law firms as interim class counsel under Civil Rule 23(g)(3).

Accordingly, with this motion, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement"), attached as Exhibit A; (2) approve the proposed Notices of Class and Collective Action Settlement ("Notice"), attached as Exhibit B and direct its distribution in accordance with the terms of the settlement agreement; and (3) approve the proposed schedule for final settlement approval, as outlined herein. A proposed Order granting this Motion is attached as Exhibit C. In support thereof, Plaintiffs state as follows:

I.  **General Overview.**

    A.  **Factual Allegations and Procedural Background.**

Plaintiff, Matthew Luker ("Luker" or "Plaintiff"), is a member of a putative collective action under the FLSA seeking to recover overtime wages, as well as a putative Rule 23 class asserting common law unpaid wage claims, from Defendant Cognizant (collectively referred to as "Plaintiffs" or "the Class Members"). Plaintiffs are call center employees, commonly referred to at Cognizant as "Senior Process Executive – Voice and/or Process Executive – Voice", who worked for Defendant within the three years. Including Plaintiff, there are approximately 330 current and former employees who work or worked for Defendant that comprise the putative Rule 23 class, all of whom are also by definition members of the FLSA putative collective.

Luker worked as a Senior Process Executive - Voice at Cognizant's Tampa, Florida call center from October of 2016 until August of 2019. Like Luker, the Class/Collective Members also worked as Senior Process Executives - Voice and/or Process Executive – Voice at Cognizant's

Tampa, Florida call center on two very specific projects, the Emblem Healthcare account, and the TMG account, at some point dating back to September 23, 2016.  The principal job duty of Cognizant's telephone-dedicated process executives, like Luker, is to take calls from or make calls to existing customers and provide general customer service-related support. More specifically, the customer service support they provide includes activating or updating accounts, assisting with billing inquiries, and addressing billing, credit, and collection issues.

Cognizant paid Luker and the Putative Class members on an hourly basis and classified them as "non-exempt" under the FLSA.  Luker's typical regular schedule was to work 8:30 – 5 p.m., 5 days a week.  However, Luker contends that he and other putative class members frequently worked "off the clock."  For example, Luker contend that a number of critical tasks must be performed before a call center employee is ready to take a call from or make a call to a customer.  These tasks include: (1) logging on to a computer; (2) logging on to Cognizant' network; (3) opening relevant computer programs and software applications; (4) reviewing memoranda and e-mail; (5) summarizing notes from previous telephone calls; and (6) completing other essential tasks.  Furthermore, Luker alleges that he and other putative class members were required, or encouraged to, complete these essential tasks before their shifts begin, during their designated lunch breaks, and after their shifts are completed.

The parties hotly dispute if here was any off-the-clock work, let alone the duration of the unpaid time.  Luker contends that he had up to an hour of off-the-clock work per day.  Defendant believes Luker's account is greatly exaggerated and that the process executives where properly paid for all time worked.  Among other things, Defendant contends that the two timekeeping systems using during the class period allowed process executives to record all time worked and

there was no requirement to perform work outside of one's shift.  Defendant also asserts that, unlike Luker, not all process executives were scheduled to work forty hours a week.

### 1.    The FLSA Claim.

In Count One of the operative Complaint Plaintiff seeks to recover unpaid overtime wages under the FLSA.  The FLSA enables process executives to recover unpaid overtime wages incurred during the previous two years, or, if the FLSA violation is "willful," the previous three years.  See 29 U.S.C. § 255(a).  A violation is "willful" if Defendant either knew or showed reckless disregard for the matter of which its conduct was prohibited by the FLSA.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988).  Regardless of whether a two-year or a three-year limitations period applies, reservation clerks do not toll the running of the limitations period until they affirmatively join this lawsuit.  *See* 29 U.S.C. § 256(b).

Crucially, Plaintiff's FLSA claim is limited to unpaid work hours that, if credited by Defendant, would have constituted overtime work and been compensable at "time and one-half" the process executive's regular rate of pay.  *See* 29 U.S.C. § 207(a)(2).  Thus, if, during a particular week, a process executive was paid for 27 hours and proved that she actually worked 27.5 hours, she would have no FLSA claim.  The 30 unpaid minutes (call of which arise beneath the FLSA's 40-hour overtime pay threshold) are referred to as "gap time."  As district courts within the 11th Circuit generally hold that the FLSA does not enable employees to recover for gap time.  *See Jernigan v. 1st Stop Recovery, Inc.*, No. 217CV265FTM99MRM, 2017 WL 3682332, at *2 (M.D. Fla. Aug. 25, 2017); *Bennett v. City of Morrow, Georgia*, No. 1:05-CV-2041-GET, 2007 WL 9701057, at *10 (N.D. Ga. Mar. 22, 2007).

Plaintiff's inability to recover for gap time under the FLSA is crucial to this lawsuit because process executives often work fewer than 40 hours per week.  In weeks they work less than 40 hours, they have no viable FLSA claim for those weeks.

With respect to overtime weeks, Plaintiff and the process executive can recover overtime compensation for unpaid activities only if they can prove that the time is "integral and indispensable" to the "principle activities" of the process executive position.  *See Integrity Staffing Sols., Inc., v. Busk*, 574 U.S. 27, 32–35 (2014).  And even under these circumstances, Defendant could possibly escape liability by establishing that such time is *de minimis.  See Brock v. City of Cincinnati*, 236 F.3d 739, 804 (6th Cir. 2001); *Peterson v. Neinet Diversified Sols.*, No. 17-cv-1064, 2019 Wl 4166998, at *14 (D. Colo. Sept. 3, 2019) ("This court concludes that the Boot-Up Time and Citrix-Activity Time, collectively 'pre-shift' activities constitute *de minimis* time and therefore are not compensable.").

### 2.     The Florida Common Law Claim.

The essence of Plaintiffs' Rule 23 class claim in Count Two for unpaid "gap time" wages under Florida common law asserts that Defendant failed to pay straight time (i.e., the regular rate) for all off-the-clock hours worked under 40 hour per week.  Stated another way, Count Two seeks to recoup the difference between the overtime wages owed and each class member's hourly wage at the regular rate for off-the-clock hours worked.  And while Florida law does not expressly create a cause of action for "unpaid wages," federal courts have interpreted claims for "unpaid wages" as a claim for unpaid wages under Florida common law.  *See Perez v. Mediglez Wellness Ctr., Inc.*, Case No. 8:12–cv–2751–T–33EAJ, 2013 WL 5566183, at *4 (M.D. Fla. Oct. 8, 2013) (citing *Baker v. Fid. Mortg. Direct Corp.*, Case No. 8:10–cv–2596–T–24TBM, 2011 WL 1560665, at *2 n. 4 (M.D. Fla. Apr. 25, 2011)).

## C.    Litigation Risks.

Obtaining the unpaid wages described above is no easy task.  In particular Plaintiff would need to:

- Convince the Court that the common law claim should proceed to trial on a classwide basis under Federal Rule of Civil Procedure 23, and that the FLSA claim should proceed on a collective basis under 29 U.S.C. § 216(b);

- Defeat Defendant's argument that the vast majority of process executives followed Defendant's time recording policy and were paid for all hours worked.

- Prove that process executives really did work off-the-clock and defeat Defendant's argument that the amount of off-the-clock work Plaintiff alleges, both with regard to frequency and duration, is a gross exaggeration that cannot be supported with admissible evidence;

- Defeat Defendant's argument that the amount of off-the-clock work is *de minimis.*

- Prove that the activities associated with the unpaid start-up time is compensable because they are "integral and indispensable" to the "principle activities" of the reservation clerk position. *See Jimenez v. Board of County Commissioners of Hidalgo County*, 2015 U.S. Dist. LEXIS 162698, *54-59 (D.N.M. Oct. 20, 2015) (holding that time dispatchers spend "retriev[ing] a headset" and "log[ging] into the computer system" is not compensable), *aff'd in relevant part*, 697 F. Appx. 597 (10th Cir. 2017).

- Defeat Defendant's legal argument that the common law claim requires and enforceable wage payment agreement (which, all parties agree, does not exist); and

- Defeat Defendant's legal argument that it did not know the alleged off-the-clock work was occurring. *See Wood v. Mid-America Management Corp.*, 192 F. Appx. 378, 381 (6th Cir.

2006) ("At the end of the day, an employee must show that the employer knew or should have known that he was working overtime[.]")

**B.    Settlement Discussions and Mediation.**

On November 4, 2019, the Parties participated in an all-day mediation, with the assistance of highly-respected, independent mediator, arbitrator, and special master Hunter R. Hughes, III, Esq., in Atlanta, Georgia. Mr. Hughes is a very knowledgeable and skilled wage and hour class action mediator, who is frequently retained by attorneys throughout the country to resolve large class, collective, and mass action cases. Before the mediation, Defendant produced to Class Counsel voluminous data on the class, including timekeeping and payroll data (primarily in Excel format). The Parties also prepared and submitted extensive mediation memoranda addressing merits and damages issues, and provided the mediator with damages models. During the mediation, Defendant provided Class Counsel with additional information about the facts underlying the claims made in the Litigation. Based on the extensive informal discovery and exchange of information, Class Counsel obtained a solid understanding of the facts underlying this litigation. Ultimately, with Mr. Hughes' assistance, the parties were able to reach a settlement at mediation. Class Counsel now seeks Courts approval of the settlement, which Defendant does not oppose.

**II.    Summary of the Settlement.**

The settlement terms are detailed in the accompanying Joint Stipulation of Settlement ("Agreement"). Its material terms are briefly summarized below:

**A. Scope of the Settlement Class/Collective.**

The settlement covers all individuals who formerly or currently worked for Defendant on the Emblem Healthcare and/or TMG accounts, had the job title Senior Process Executive –

Voice and/or Process Executive – Voice, and were based out of Cognizant's Contact Center in Tampa, Florida, during the period of September 23, 2016 through the date of the Court's anticipated preliminary approval order. *See* Agreement at ¶ 2.29 (hereinafter "process executives"). Thus, for purposes of settlement, the parties have agreed to use the three-year limitations period applicable to "willful" FLSA violations. [1] This time period entirely encompasses the maximum two-year limitations period that applies to Plaintiff's common law claim. Based on the data provided in advance of the mediation, the parties estimate that the settlement class/collective will include approximately 330 current and former process executives.

### B.    The Money Payments.

The settlement requires Defendant to make a non-reversionary payment of $290,000 plus all employer-side taxes associated with payments to the Settlement Participants. *See* Agreement at ¶ 2.21. Contingent on the Court's approval, the total settlement fund will be distributed as follows: (i) $173,144.44 will be paid to the Settlement Participants; (ii) a $10,00 service award will be paid to Plaintiff; (iii) $10,188.89 will be paid to Plaintiffs' counsel for out-of-pocket expenses in this case, and (iv) $96,666.67 will be paid to Class Counsel to cover attorney's fees. *See id.* at ¶¶ 2.21-2.22, 11.1, 11.4. If the Court disapproves any portion of the requested service award, attorney's fees, or expenses, the disapproved monies will enhance the $173,144.44 fund to be distributed to the Settlement Participants. *See id.* at ¶¶ 2.22, 11.3, 11.4.

The anticipated $173,144.44 payment to the Settlement Participants will result in an average payment of approximately $524.68 ($173,144.44 divided by 330 Settlement

---

[1] Defendant, of course does not admit to any violation – "willful" or otherwise – of any law. *See* Agreement at ¶¶ 1.2–1.3.

Participants). Every Settlement Participant is guaranteed a minimum $25 payment. *See* Agreement at ¶ 4.1. Beyond this minimum payment, each Settlement Participant's share of the settlement proceeds is based on the number of overtime weeks and non-overtime weeks that the Settlement Participant worked during the covered period. *See id.*

Importantly, this is not a "claims-made" settlement. All process executives who do not exclude themselves from the settlement will receive a settlement check. *See* Agreement at ¶¶ 2.39, 4.2.

### C.    Scope of the Release.

The release is strictly limited to wage and hour claims. *See* Agreement at ¶¶ 2.33, 2.34. Class/Collective Members who do not exclude themselves from the settlement release all such claims arising under Florida law. *See id.* at ¶2.34, 10.1. In addition, all Settlement Participants who cash their settlement check will be deemed to have "opted-in" to the FLSA collective and will release their FLSA claims. *See id.* at ¶ 2.33, 10.2.

In addition, as partial consideration for the requested $10,000 service award, Plaintiff has executed a broad general release.[2] *See* Agreement at Ex. 4. However, while the service award is itself conditioned on the Court's determination that the requested $10,000 payment is reasonable and warranted, it is not conditioned on the Court's approval of the specific general release proposed by the parties. *See id.* at ¶ 11.5.

---

[2] Service awards for the participation that named plaintiffs, such as Luker here, provide to class actions are commonplace, with the Eleventh Circuit recently recognizing that "[m]any circuits have endorsed incentive awards and recognize them as serving the purposes of Rule 23." *Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, No. 16-16486, 2018 WL 4762434, at *12 (11th Cir. Oct. 3, 2018). The Eleventh Circuit recently approved the same monetary amount—$10,000—as an award in *Muransky*. *See id.*, at *12–13. Considering the size of the recovery here, the same award from *Muransky* is also appropriate for Plaintiff. Plaintiff will file a motion for approval of the Service Award along with his motion for final approval of the settlement.

### D.    Notice to Class/Collective Members.

Under the settlement, Rust Consulting—an experienced and well-regarded third-party claims administrator—will issue notice of the settlement to all Class/Collective Members.  *See* Agreement at ¶¶ 7.1–7.5.  The administrator must follow detailed protocols to ensure that any notice forms returned as undeliverable are re-mailed to any updated addresses.  *See id.* at ¶ 7.3.

Crucially, each covered process executive will receive an *individualized* notice form that estimates his or her anticipated settlement payment, explains the manner in which the payment was determined, and provides the reservation clerk with an opportunity to contact the claims administrator to dispute the number of overtime and non-overtime weeks underlying the payment calculation.  *See* Agreement at Ex. 1.  The notice form also clearly describes the nature of the lawsuit, the scope of the release, the steps that the covered process executive should take to object to or be excluded from the settlement, and the time and place of the final fairness hearing.  *See id.*

## III.    ARGUMENT

### A.    Approval of Class Action Settlements Under Amended Civil Rule 23(e).

The Court should certify a Rule 23 Class as to Plaintiff's Florida common law unpaid wage claims.  "Public policy strongly favors the pretrial settlement of class action lawsuits."  *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).  Indeed, "settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits."  *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir. 1977).

Class action settlements must be approved by the Court as fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).  On December 1, 2018, Civil Rule 23 was amended to explicitly address preliminary approval for the first time. Under a new heading reading "Grounds for Decision to Give Notice," the amended Rule instructs:

> (e) Settlement, Voluntary Dismissal, or Compromise.  The claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) *Notice to the Class*.
>
> > (A) *Information That Parties Must Provide to the Court*. The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.
> >
> > (B) *Grounds for a Decision to Give Notice*. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1).

Federal district courts are increasingly treating this new standard as superseding the varying "preliminary approval" standards that courts had developed based on decisional law.  *See Padovano v. FedEx Ground Package Sys.*, 2019 U.S. Dist. LEXIS 107092, *6–7 (W.D.N.Y. June 10, 2019); *In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356, *14-16 (N.D. Cal. Mar. 29, 2019); *Swinton v. SquareTrade, Inc.*, 2019 U.S. Dist. LEXIS 25458, *13-15 (S.D. Iowa Feb. 14, 2019); *Behrens v. MLB Advanced Media, L.P.*, 2019 U.S. Dist. LEXIS 107092, at *6–7 (W.D.N.Y. June 10, 2019); *Hall v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 143542, at *5–6 n.1 (E.D. Pa. Aug. 22, 2019).  Plaintiff submits that this is the correct approach and, accordingly, applies Civil Rule 23(e)(1)'s newly minted "preliminary approval" criteria to the instant motion.

### B.    <u>Preliminary Approval is Warranted.</u>

As noted above, amended Civil Rule 23(e) establishes that, at the "preliminary approval" stage, a district court must address two questions: (i) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)"; and (ii) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal."  As discussed below, both requirements are satisfied in this lawsuit:

### 1. The Court "will likely be able to . . . approve the proposal under Civil Rule 23(e)(2)."

To determine whether the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," it must look to Rule 23(e)(2)'s new approval factors.  These factors appear under a heading reading "Approval of the Proposal":

> *(2) Approval of the Proposal*. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i)  the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Plaintiff addresses each factor below:

**a. <u>Civil Rule 23(e)(2)(A)</u>: The class representative and class counsel have adequately represented the class.**

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes").

Here, this factor is likely to be satisfied. As previously discussed, Plaintiff's counsel have worked diligently on this litigation. Prior to proceeding to mediation, they obtained and analyzed substantial timekeeping and pay records, prepared a damages model, and drafted and submitted detailed mediation memoranda. *See* pp. 1-6, *supra*. In addition, to date, Plaintiff's counsel has invested $10,188.89, in out-of-pocket expenses in this litigation. *See* Cabassa, Hill, and Justice Decls., at ¶ 18.

**b. <u>Civil Rule 23(e)(2)(B)</u>: The proposal was negotiated at arm's length.**

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." Advisory Committee Notes. The participation of an independent mediator in settlement negotiations is a strong indicator that the negotiations were conducted at arm's length and are proper. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (holding class member's accusation of self-dealing was "belied by the record" where "the parties settled only after engaging in extensive arms-length negotiations moderated by an experienced, court-appointed mediator").

Here, this factor is likely to be satisfied because the settlement was reached after arm's-length negotiations between the parties with the assistance of a highly respected third-party mediator, and before the mediation counsel for the Parties armed themselves with substantial data, records, and analysis. *See* pp. 6-7, *supra*.

**c. Civil Rule 23(e)(2)(C)(i): The relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal.**

This factor recognizes that while the "relief that the settlement is expected to provide to class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome." Advisory Committee Notes. This analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id.*

Here, this factor is likely to be satisfied. First, absent settlement, the costs and delays associated with this litigation would be significant. The Court would be required to resolve extensive and contested motions, including Plaintiff's motion for conditional certification of the FLSA collective, Plaintiff's Civil Rule 23 motion for class certification, and Defendant's anticipated motion for summary judgment and/or decertification. Moreover, if the case proceeded to trial as a class or collective action, the Court would be presented with extensive briefing regarding the scope and propriety of "representative" evidence and testimony concerning the timekeeping practices at the Center. *See, e.g.*, *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 747-49 (6th Cir. 2019) (discussing representative evidence in FLSA collective action).

Also, the parties would likely retain experts to record and attempt to quantify the alleged unpaid start-up time. Finally, while the parties' counsel have built solid damages models without the assistance of expert witnesses, they probably would retain experts for purposes of presenting damages to the jury. In sum, continued adversarial litigation would be a long, complicated, and expensive process for the parties and the Court.

With respect to litigation risk, the Court is respectfully referred to pages 5-6, *supra*, which describe the Plaintiff's three legal claims and the risks associated with such claims. As explained, there is a real potential that Defendant could win outright and leave Plaintiff and the

14

class/collective members with no recovery. Moreover, even if Plaintiff prevailed at a class/collective trial, there is no assurance that he would win more than the settlement provides.

>    **d.  <u>Civil Rule 23(e)(2)(C)(ii)</u>: The relief provided for the class is adequate, taking into account the effectiveness of the proposed method of distributing relief to the class including the method of processing class-member claims if required.**

Under this factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding."  Advisory Committee Notes.  This factor is satisfied because class and collective members are not required to file claim forms in order to receive a settlement payment. *See* Agreement at ¶¶ 2.39, 4.2.  Moreover, every individual covered by the settlement will receive an *individualized* notice form that explains the settlement and specifies his or her anticipated settlement payment amount.  *See id.* at Ex. 1.

With respect to the adequacy of the payments, the settlement achieves an excellent result for the covered process executives. As previously stated, the settlement results in an average payout of $524.68 per process executive.

>    **e.  Civil Rule 23(e)(2)(C)(iii): The terms of any proposed award of attorney's fees, including the timing of payment.**

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement."  Advisory Committee Notes.  Here, the total combined attorney's fees $96,666.67 will be paid at the same time as the employee payments.  *See* Agreement at ¶¶ 11.1–11.3.  The attorney's fee recovery equals approximately 33.3% of the $290,000 settlement fund.

At the final approval stage, Plaintiff will fully brief the fairness and reasonableness of the requested attorneys' fees under Eleventh Circuit law.  *See Bennett v. Behring Corp.*, 737 F.2d 982,

986 (11th Cir. 1984).  In the meantime, it is likely that the amount and timing of the proposed attorneys' fees will support final approval because attorney fee recoveries in class and collective actions representing one-third of the common fund generally fall within the acceptable range.  *See, e.g.*, *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 814CV01182CEHEAJ, 2015 WL 12843849, at *2 (M.D. Fla. Dec. 7, 2015) (awarding 32% and collecting cases where one-third of the common fund designated as attorneys' fees were found warranted).[3]  Moreover, even if the Court were to reduce the attorneys' fees at the final approval stage, the disapproved monies would merely enhance the settlement payments to class/collective members.  *See* Agreement at ¶¶ 2.22, 11.3.

### f. Civil Rule 23(e)(2)(C)(iv): Any agreement required to be identified under Civil Rule 23(e)(3).

Civil Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal."  Here, the accompanying Agreement is the only agreement connected to this class action settlement.  So this factor is also likely to be satisfied.[4]

### g. Civil Rule 23(e)(2)(D): The proposal treats class members equitably relative to each other.

---

[3] *See also, e.g.*, *Wolff v. Cash 4 Titles*, No. 03–cv–22778, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) (observing that "[o]ne-third of the recovery is considered standard"); *Hosier v. Mattress Firm, Inc.*, No. 10–cv–294, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement designating 30% for attorneys' fees and costs); *Morefield v. NoteWorld, LLC*, Case Nos. 10–cv–117 and 11–cv–29, 2012 WL 1355573, at *5 (S.D. Ga. April 18, 2012) (approving class settlement with 33.33% payable as attorneys' fees); *Atkinson v. Wal–Mart Stores, Inc.*, Case No. 08–cv–691, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of maximum common fund apportioned as attorneys' fees).

[4] As previously noted, Plaintiff, as partial consideration for the requested $10,000 service award, has executed a broad general release. *See* Agreement at Ex. 4.  But while the service award is itself conditioned on the Court's determination that the requested $10,000 payment is reasonable and warranted, it is not conditioned on the Court's approval of the general release.  *See id.* at ¶ 11.5; *see also, e.g.*, *Caamal v. Shelter Mortg. Co.*, No. 6:13-CV-706-ORL-36, 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013) (approving FLSA settlement agreement whereby plaintiff received monetary compensation, a mutual release of claims, and an agreement to provide a neutral reference in exchange for a general release of claims, a non-disparagement agreement and a waiver of future employment, and collecting cases).

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." Advisory Committee Notes. This factor is likely to be satisfied because, as previously explained, the parties have agreed on an allocation formula that is based on the number of weeks that each process executive worked during the covered period and, with respect to such weeks, gives extra credit to overtime workweeks to reflect: (i) the fact that unpaid start-up time incurred during an overtime workweek is compensable at a "time and one-half" pay rate under the FLSA; and (ii) Plaintiff's counsel's assessment that Florida common law claim (which is the only vehicle by which process executive can recover for non-overtime weeks) is weak relative to the FLSA recovery.

**2. The Court "will likely be able to certify the class."**

Having determined that the parties "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second half of the preliminary approval inquiry: whether the Court "will likely be able to . . . certify the class." Fed. R. Civ. P. 23(e)(1)(B)(ii). Here, Plaintiff will ask the Court to certify a class/collective covering the relevant process executives assigned to the contact center after the date falling three years before the Court's anticipated preliminary approval order. *See* Agreement at ¶¶ 2.8, 2.9.

To obtain class certification, Plaintiff must satisfy Civil Rule 23(a)'s four requirements: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. Fed. R. Civ. P. 23(a); *Morefield v. NoteWorld, LLC*, No. 1:10-CV-00117, 2012 WL 1355573, at *2 (S.D. Ga. Apr. 18, 2012). Next, he must satisfy Rule 23(b)(3)'s two additional requirements: (i) common questions of law or fact must "predominate over any questions affecting only individual members"; and (ii) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

17

As discussed below, Plaintiff is likely to satisfy the six Rule 23 requirements:[5]

**Numerosity:**  Civil Rule 23(a)(1)'s numerosity requirement is satisfied where a class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Here, numerosity is likely to be satisfied because the class includes 330 readily-ascertainable process executives, making joinder impracticable.  *See, e.g.*, *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (thirty-one class members satisfied numerosity).

**Commonality:**  Civil Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same).

Here, the commonality requirement is satisfied because, *inter alia*, there are multiple questions of law and fact that center on Defendant's class-wide pay policies and practices pertaining to its process executives, and are common to the Settlement Class.  For instance, process executives at the Contact Center were paid on an hourly basis, and were required to log into various

---

[5] It is generally unclear whether a judge preliminarily approving the settlement of a "hybrid" class/collective lawsuit —i.e., a lawsuit that asserts both Rule 23 "class action" claims arising under state wage law and "collective action" claims arising under the FLSA—needs to "conditionally certify" the FLSA collective at the same time it "preliminarily approves" the Rule 23 class.  Such an approach probably makes sense, since the goal of both preliminary approval and conditional certification is to determine whether individuals covered by the litigation should receive notice. See Fed. R. Civ. P. 23(e)(1) (addressing preliminary approval and headed "Grounds for Decision to Give Notice"); *Hoffman-La Roche v. Sperling*, 493 U.S. 165 (1989) (explaining that the point of FLSA conditional certification is the issuance of notice to putative collective members). Regardless, FLSA conditional certification entails "fairly lenient standard" to show that plaintiffs are similarly situated. *Anderson v. Cagle's Inc.*, 488 F.3d 945, 953 (11th Cir. 2007).  FLSA conditional certification is thus warranted because, as discussed in this brief, the more demanding Rule 23 class certification standards are likely to be satisfied.

computer platforms, databases, and phone systems at the beginning of the workday. These are precisely the types of across-the-board practices that establish commonality.

In fact, federal courts throughout Florida routinely grant class certification of hybrid wage and hour claims under both federal and Florida law. *See, e.g., Lopez v. Hayes Robertson Group, Inc.*, No. 4:13-cv-10004, D.E. 47 (S.D. Fla. Sept. 23, 2013) (certifying opt-out Rule 23 class of Florida state law minimum wage claims regarding allegations of an illegal tip pool); *Garcia-Celestino v. Ruiz Harvesting, Inc*., 280 F.R.D. 640 (M.D. Fla. 2012) (certifying Florida state wage and hour claims); *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010) (same); *Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. June 4, 2009) (same); *Mesa v. Ag-Mart Produce, Inc*., 2008 WL 2790224 (M.D. Fla. July 18, 2008) (same).

**Typicality:** Civil Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This tests whether the interests of the named plaintiff and the class members are sufficiently aligned. *See Komberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984)* (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001)* (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

Here, typicality exists because Named Plaintiff Luker and the other reservation clerks share the same interest of recovering unpaid wages for the alleged unpaid off-the-clock work. And Luker's claims concern the same alleged pay policies and practices of Defendant's, arise from the

same legal theories, and allege the same types of harm and entitlement to relief.  In sum, Plaintiff's interests and basic legal theory are entirely aligned with those of the other process executives.

**Adequacy:**  Civil Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Adequacy relates to: (1) whether the proposed class representatives have interests antagonistic to the Settlement Class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue.  *See Fabricant*, 202 F.R.D. at 314.

Here, adequacy is likely to be satisfied.  First, Plaintiff's counsel are experienced employment rights lawyers who have handled hundreds of federal court actions concerning wage and overtime laws. *See generally* Declarations of Luis A. Cabassa, Brandon J. Hill, and Chad Justice.  Class Counsel regularly engages in wage and hour class litigation and other complex litigation similar to the present Action, and have dedicated substantial resources to the prosecution of the Action.  Moreover, Plaintiff does not have any interests that are antagonistic to the class.  As already noted, his interests are entirely aligned with other class members.  Finally, as previously discussed, Plaintiff and Class Counsel have vigorously and competently pursued this litigation on behalf of the process executives.

**Predominance:**  Civil Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The Rule requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member."  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs, Inc.,* 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).

Here, predominance is satisfied because the success or failure of Plaintiff's challenge to Defendant's timekeeping and payroll practices will turn on this Court's application of common legal principles to a common set of facts. In this regard, this lawsuit is similar to one where the Supreme Court found predominance satisfied in a case in which hundreds of employees at a single chicken-processing facility alleged that they were performing off-the-clock work at the start and end of their shifts and challenged the poultry company's timekeeping and payroll practices. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1042–44 (2016).

**<u>Superiority</u>:** Civil Rule 23(b)(3) also requires class litigation to be "superior to other available methods for fairly and efficiently adjudicating the controversy," and describes four factors that are "pertinent" to this superiority requirement. Fed. R. Civ. P. 23(b). As discussed below, each of the four superiority factors favors class certification:

First, Civil Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions." This requirement is intended to protect against class certification where individual class members have a strong interest in "individually controlling" the litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts. *See* William Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions* at § 4:69. This is not such a lawsuit. Here, the value of the off-the-clock claims are small on an individual basis, and the legal issues surrounding Plaintiff's claims do not elicit much emotion.

Second, Civil Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. Here, no related litigation exists.

Third, Civil Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum." Fed. R. Civ. P. 23(b)(3)(C). Here, concentration of all claims in this Court is desirable because the contact center is located in this judicial district and division.

Fourth, Civil Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D). This requirement is automatically satisfied when a case is being certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

**Ascertainability:** A class must be "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). This requires the plaintiff to show that the "class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). The identification of "class members is administratively feasible when it is a manageable process that does not require much, if any, individual inquiry." *Id.* (internal quotation marks omitted).

Here, the ascertainability requirement is satisfied because individuals who worked in the job title of "process executive" or its equivalent at the contact center during the relevant period and on the relevant client accounts can be (and have been) objectively identified through Defendant's payroll system.

In sum, all of Rule 23's requirements are met for the purposes of certifying a settlement class. Thus, the Court should preliminarily certify the settlement class.

### 3. The proposed notice satisfies Civil Rule 23(c)(2)(B).

When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Civil

Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." *Id.* at 23(c)(2)(B). Such notice can be effectuated through "United States mail, electronic means, or other appropriate means." *Id.* Also, any notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed R. Civ. P. 23(c)(2)(B).

Here, all of the above requirements are satisfied. Under the Agreement, the settlement administrator will be provided with name and last known residential address of each class/collective member and will mail a notice form to each individual. *See* Agreement at ¶¶ 7.1-7.2. If the post office returns any package with a forwarding address, the settlement administrator will promptly re-mail the package to the forwarding address. *Id.* at ¶ 7.3. If the post office returns any package without a forwarding address, the settlement administrator will work diligently to obtain an updated address and will promptly mail the package to any updated address. *Id.* Individuals will have 75 days from the initial mailing date to exclude themselves from or object to the settlement. *Id.* at ¶ 2.27.

Moreover, the notice form is written in clear language and accurately describes the nature of the action, the settlement, the scope of the release, and the process class members must follow to exclude themselves from or object to the settlement. See Agreement at Ex. A. Importantly, each notice form is individualized to provide the class/collective member with his/her anticipated payment amount. See id.

In sum, the notice form and contemplated notice protocols constitute the "best notice that is practicable under the circumstances," and, therefore, should be approved.

### C.    The Court Should Appoint the Undersigned Firms as Interim Class Counsel.

Where, as here, a class action lawsuit is settled prior to class certification, the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." *See* Fed. R. Civ. P. 23(g)(3).  Then, at the final approval stage, these lawyers can seek to be appointed class counsel in conjunction with the certification of the settlement class. *See id.* at 23(g)(1).

Here, the law firms of Wenzel Fenton Cabassa, P.A., and Justice for Justice LLC respectfully ask that the Court to appoint them as interim class counsel.  Each firm is comprised of experienced employment rights lawyers with significant experience litigating wage and hour claims.  *See generally* Cabassa, Hill, Justice Decls.

## VI.    CONCLUSION

Plaintiff respectfully requests that the Court preliminarily approve the settlement, conditionally certify the settlement class, appoint Plaintiff's counsel as Interim Class Counsel, approve the Settlement Notice, and enter the Proposed Order attached as Exhibit C.

### LOCAL RULE 3.01(g) COMPLIANCE

Pursuant to Local Rule 3.01(g), Counsel for Plaintiff conferred with counsel for the Defendant as to the relief sought in this Motion.  Defendant does <u>not</u> object to this Motion.

DATED this 14th day of January, 2020.

Respectfully submitted,

/s/ *Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar No. 0037061
**Wenzel Fenton Cabassa, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Direct: 813-337-7992
Main: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
**Attorney for Plaintiffs**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of January, 2020, the foregoing was electronically filed using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Brandon J. Hill*
**BRANDON J. HILL**