# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MATTHEW LUKER, on behalf of
himself and on behalf of all
others similarly situated,**

    **Plaintiffs,**

**v.**                            **CASE NO:  8:19-cv-01448-WFJ-JSS**

**COGNIZANT TECHNOLOGIES
SOLUTIONS U.S. CORPORATION,**

    **Defendant.**

_____/

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class Representative Matthew Luker ("Luker" or "Plaintiff"), pursuant to Federal Rule of Civil Procedure ("Rule") 23, respectfully files this Unopposed Motion for Final Approval of the Parties' Class Action Settlement.[1]  On January 14, 2020, this Court issued an order preliminarily approving the Settlement Agreement between Plaintiff, on behalf of the Class/Collective Members, and Defendant. (Doc. 37.) Notice was sent to the Class/Collective Members and their reaction to the Settlement was overwhelmingly positive. No Class/Collective Member objected to the settlement, and none asked to be excluded.

In sum, little has changed since the Court's Order granting the Plaintiff's Motion for preliminary approval of the Settlement, confirming that the Settlement is fair, reasonable, and adequate, and warrants final approval.  For these reasons, Plaintiff respectfully requests this

---

[1] All defined terms contained herein shall have the same meanings as set forth in the Joint Stipulation of Settlement ("Stipulation" or "Settlement Agreement"), filed on January 14, 2020 (Doc. 36-1).

1

Honorable Court grant final approval of the Parties' Class Action Settlement.  A proposed Order granting this Motion is attached as Exhibit A.

I.    **General Overview.**

    A.    **Factual Allegations and Procedural Background.**

Luker is a member of a putative collective action under the FLSA seeking to recover overtime wages, as well as a putative Rule 23 class asserting common law unpaid wage claims, from Defendant Cognizant (collectively referred to as "Plaintiffs" or "the Class/Collective Members"). The Class/Collective Members are call center employees, commonly referred to at Cognizant as "Senior Process Executives – Voice and/or Process Executives – Voice" ("Process Executives"), who worked for Defendant during the Covered Period. Including Plaintiff, there are 308 current and former employees who work or worked for Defendant that comprise the putative Rule 23 class, all of whom are also by definition members of the Fair Labor Standards Act ("FLSA") putative collective.

Luker worked as a Senior Process Executive – Voice at Cognizant's Tampa, Florida call center from October 2016 until August 2019. Like Luker, the Class/Collective Members also worked as Process Executives at Cognizant's Tampa, Florida call center on two very specific projects, the Emblem Healthcare account and the TMG account, at some point dating to September 23, 2016. The principal job duty of Cognizant's telephone-dedicated Process Executives working on these two projects was to take calls from existing customers and provide general customer service–related support. More specifically, the customer service support provided by Cognizant's Process Executives working on these two projects included

activating or updating accounts, assisting with billing inquiries, and addressing billing, credit, and collection issues.

Cognizant paid Luker and the Class/Collective Members on an hourly basis and classified them as "non-exempt" under the FLSA.  Luker's typical regular schedule was to work 8:30 a.m. – 5 p.m., five days a week, not including overtime.  However, Luker asserts that he and other Class/Collective Members worked, on average, about five hours of overtime per week for which they were routinely not compensated.  This "off-the-clock" work includes both the "straight time" owed and overtime compensation.  For example, Luker asserts that a number of critical tasks must be performed before a Class/Collective Member is ready to take a call from a customer.  These tasks include (1) logging on to a computer, (2) logging on to Cognizant's network, (3) opening relevant computer programs and software applications; (4) reviewing memoranda and e-mails, (5) summarizing notes from previous telephone calls, and (6) completing other essential tasks.  Furthermore, Luker alleged that in accordance with Cognizant's policies, Class/Collective Members are required, or encouraged, to complete these essential tasks before their shifts begin, during their designated lunch breaks, and after their shifts are completed.  Defendant categorically denies that Luker and/or Class/Collective Members worked off the clock and further disputes the alleged duration of any off-the-clock work.

In Count One of the operative Complaint, Plaintiff seeks to recover unpaid overtime wages under the FLSA.  In Count Two, Plaintiff asserts a Rule 23 class claim that Defendant failed to pay straight time (i.e., their regular rate) for all off-the-clock hours worked.  And while Florida law does not expressly create a cause of action for "unpaid wages," federal courts

have interpreted allegations concerning "unpaid wages" as a claim for unpaid wages under Florida common law.[2]

There are 308 Class/Collective Members.  Plaintiff now seeks final class certification of the two following classes:

> **UNPAID WAGES RULE 23 CLASS**:  All individuals who formerly or currently worked for Defendant on the Emblem Healthcare and/or TMG accounts, had the job title Senior Process Executive – Voice and/or Process Executive – Voice, and were based out of Cognizant's Contact Center in Tampa, Florida, from September 23, 2016 through the January 14, 2020.

> **FLSA OVERTIME COLLECTIVE**: All individuals who formerly or currently worked for Defendant on the Emblem Healthcare and/or TMG accounts, had the job title Senior Process Executive – Voice and/or Process Executive – Voice, and were based out of Cognizant's Contact Center in Tampa, Florida, from September 23, 2016 through the January 14, 2020.

In response to Luker's allegations, Cognizant argued that Luker's claims would fail on the merits for several reasons.  To start, Cognizant argued that the purportedly "uniform" off-the-clock work that Luker alleges violates Cognizant's policies and training, which require employees to report all time worked.  Additionally, even if Luker could establish that he and all other Process Executives uniformly performed uncompensated work, Cognizant has numerous substantive defenses.  For example, Cognizant would argue that (1) any alleged off-the-clock work time was *de minimis*; (2) Cognizant did not know of, and could not reasonably have known of, any off-the-clock work; and (3) not all Class/Collective Member worked overtime each week.  Cognizant would also argue that Luker would have difficulty establishing

---

[2] *Perez v. Mediglez Wellness Ctr., Inc.*, Case No. 8:12–cv–2751–T–33EAJ, 2013 WL 5566183, at *4 (M. D. Fla. Oct. 8, 2013) (*citing Baker v. Fid. Mortg. Direct Corp.*, Case No. 8:10–cv–2596–T–24TBM, 2011 WL 1560665, at *2 n. 4 (M. D. Fla. Apr. 25, 2011)).

that Cognizant had a common practice of requiring, or knowingly permitting, off-the-clock work, creating issues for class treatment.

Despite the two sides' conflicting positions, they were able to find common ground and reach a tentative class-wide resolution, as expanded on below.

### B.    Settlement Discussions and Mediation.

On November 4, 2019, the Parties participated in an all-day mediation with the assistance with highly respected Hunter R. Hughes, III, in Atlanta, Georgia.  Mr. Hughes is a very knowledgeable and skilled wage and hour class action mediator who is frequently retained by attorneys throughout the country to resolve large class action cases.  In that mediation, Defendant provided Class Counsel with additional information about the facts underlying the claims made in the Litigation.  The Parties had also previously exchanged data on the Class, including as to weeks worked and potential damages.   Ultimately, with Mr. Hughes's assistance, the parties were able to reach a settlement at mediation for which they now seek final Court approval.

### II.    Summary of the Settlement.

### A.    Terms.

Defendant has agreed to create a settlement fund of up to $290,000.00 ("the Fund" or the "Maximum Settlement Amount").  The Fund will cover awards to Settlement Participants, Court-approved attorneys' fees and costs, and Court-approved service payments to Plaintiff. In addition to the Fund, Defendant is responsible for paying the cost of administering the settlement and the employer's share of employment taxes, including federal and state payroll

taxes; the employer's share of the FICA tax; and any federal and state unemployment tax due on the portion of Class members' settlement awards that is allocated to wages.

      **B.**      <u>**The Limited Release Applies Only to Wage Claims**</u>**.**

Class/Collective Members who have not opted out of the settlement, i.e., Settlement Participants, will release the Defendant and the other Released Parties from any and all state and local wage and hour and wage-payment claims concerning their employment in the position of Senior Process Executive – Voice and/or Process Executive – Voice based out of the Tampa Call Center arising any time prior to Final Approval of the Settlement, including, but not limited to, claims that were asserted or could have been asserted under the Florida common law and any and all other state or local wage hour or wage-payment statutes or regulations or common-law theories ("Released State Law Claims"). In addition, if a Settlement Participant cashes his or her Individual Settlement Payment Check, he or she will have opted into this Action and will release Defendant and the other Released Parties from any and all claims, obligations, causes of action, actions, demands, rights, and liabilities, whether known or unknown, whether anticipated or unanticipated, related to any and all claims under the FLSA and other federal wage and hour and wage-payment laws concerning his or her employment in the position of Senior Process Executive – Voice and/or Process Executive – Voice based out of the Tampa Call Center at any time arising prior to the Final Approval Date ("Released Federal Law Claims").

      **C.**      <u>**Allocation Formula**</u>**.**

Individual Settlement Payments will be paid to Settlement Participants according to the "Allocation Formula" set forth in Section 4.1 of the Settlement Agreement. Specifically, the

Allocation Formula shall calculate each Settlement Participants pro rata allocation percentage in the following manner: (1) first, using the number of Overtime and Non-Overtime Workweeks each Class/Collective Member worked during the Covered Period, the Claims Administrator will compute the Settlement Percentage for each Settlement Participant and multiply that Settlement Percentage by the Net Settlement Amount to determine the Settlement Participant's Settlement Share; (2) if the Settlement Share is less than $25 for any Settlement Participant, that Settlement Participant will be awarded $25 as his or her Individual Settlement Payment; (3) the number of Settlement Participants who receive $25 shall be totaled, and their Individual Settlement Payments shall be subtracted from the Net Settlement Amount; (4) the Settlement Percentage shall then be recalculated for the remaining Settlement Participants, excluding the Non-Overtime and Overtime Workweeks associated with the Settlement Participants receiving the minimum $25 Individual Settlement Payment; and (5) this process shall be repeated until every Settlement Participant's Settlement Share is greater than or equal to $25.

Pursuant to the allocation formula, the average gross payment to Settlement Participants is $562.16.  *See* Declaration of Abigail Schwartz , attached as Exhibit B ("Schwartz Decl."), ¶ 17. Importantly, this is a "claims paid" settlement, meaning class members are not required to submit a claim form as a condition of receiving their Individual Settlement Payments.  Instead, the Administrator will automatically mail all Settlement Participants their payments to their last known addresses.

### D.   Attorneys' Fees and Costs.

Class Counsel will apply for one-third of the Settlement Fund as attorneys' fees ($96,666.67), plus reasonable litigation costs, which Defendant has agreed not to oppose.  The Settlement Agreement is not conditioned on the award of attorneys' fees.  *See* Settlement Agreement at Section 11.1.

### E.   Service Award.

In addition to receiving his Individual Settlement Payment, Luker will apply for an award in the amount of $10,000 in recognition of the services rendered on behalf of the class ("Service Award"). Service awards for the participation that named plaintiffs, like Luker here, provide to class actions are commonplace, with the Eleventh Circuit recently recognizing that "[m]any circuits have endorsed incentive awards and recognize them as serving the purposes of Rule 23." *Muransky v. Godiva Chocolatier, Inc.*, No. 16-16486, 2018 WL 4762434, at *12 (11th Cir. Oct. 3, 2018). The Eleventh Circuit recently approved the same award—$10,000—in *Muransky*.  2018 WL 4762434, at *12–13. Considering the size of the recovery here, the same award from *Muransky* is also appropriate here.  Plaintiff will file a motion for approval of the Service Award along with his motion for final approval of the settlement.

### F.   The Court's Order granting Preliminary Approval of the Settlement.

On January 14, 2020, this Court issued an Order preliminarily approving the Class Action Settlement and the notice to Class/Collective Members.  (Doc. 37.)  Notice was then mailed out by the Settlement Administrator, as explained further below.

G.     **The Class Members' Reactions to the Settlement.**

As indicated in the sworn Declaration from the Claims Administrator, Abigail Schwartz from Rust Consulting, Inc., the class members' reactions to the settlement were overwhelmingly positive. In fact, there were no objections or even a single request for exclusion from the class action, no Collective/Class Member disputed the workweeks used to calculate the settlement payment, and not even a single request for exclusion from the class action. *See* Ex. B, ¶¶ 14-16.

III.    **The Court Should Grant Final Certification of the Rule 23 Common Law Unpaid Wage Class for Settlement Purposes.**

The Court should certify a Rule 23 class as to Plaintiffs' common-law unpaid wage claims. Indeed, "settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir. 1977). Before a class action settlement may be approved, however, a number of prerequisites must be established. First, the Court must certify the settlement class. FED. R. CIV. P. 23(c). Second, the Court must determine whether the settlement is fair and adequate. *See In re Checking Account Overdraft Litig.,* No. 09–MD–02036–JLK, 2011 WL 5873389, at *6 (S.D.Fla. Nov. 22, 2011); FED. R. CIV. P. 23(e)(2), (e)(1).

A.     **The Settlement Class Satisfies the Requisite Rule 23(a) Factors.**

As to step one, to certify a class for settlement purposes the Court must determine whether the prescriptions of Rule 23 are satisfied. *See, e.g., Morefield v. NoteWorld, LLC*, 2012 WL 1355573, at *2 (S.D. Ga. Apr. 18, 2012). Specifically, certification requires that

each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b).  Here, the settlement satisfies all relevant factors.

### 1. Numerosity.

There are 308 members of the proposed Rule 23 class, making joinder impracticable. Thus, the Rule 23(a)(1) numerosity requirement is met. *See Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (thirty-one class members satisfied numerosity).

### 2. Commonality.

The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indust., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same).

Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on Defendant's class-wide pay policies and practices pertaining to its Process Executives, and are common to the Settlement Participants.  In fact, federal courts throughout Florida routinely grant class certification of hybrid wage and hour claims under both federal and Florida law.  *See, e.g.*, *Lopez v. Hayes Robertson Grp., Inc.*, 4:13-cv-10004-CIV-MARTINEZ-MCALILEY, D.E. 47 (S.D. Fla. Sept. 23, 2013) (certifying opt-out Rule 23 class of Florida state law minimum-wage claims regarding allegations of an illegal tip pool); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640 (M.D. Fla. 2012) (Moody, J.) (certifying Florida state wage and hour claims); *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010) (Steele, J.) (same; *Napoles-Arcila v. Pero*

*Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. June 4, 2009) (same); *Mesa v. Ag-Mart Produce, Inc.*, 2008 WL 2790224 (M.D. Fla. July 18, 2008) (Howard, J.) (same).

### 3.    **Typicality.**

Luker's claims are typical of the Settlement Participants for purposes of this settlement because they concern Defendant's same alleged pay policies and practices, arise from the same legal theories, and allege the same types of harm and entitlement to relief.  Therefore, Rule 23(a)(3) is satisfied.  *See Komberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

### 4.    **Adequacy.**

Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representatives have interests antagonistic to the Settlement Participants and (2) whether the proposed class counsel has the competence to undertake the litigation at issue.  *See Fabricant*, 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between Plaintiff and the Settlement Participants, and Plaintiff has retained competent counsel to represent him and the Settlement Participants.  *See generally* Decls. of Luis A. Cabassa, Brandon J. Hill, and Chad Justice., attached hereto as Exhibits C-E.  Class Counsel regularly engages in wage and hour class litigation and other complex litigation similar to the present Action, and has dedicated substantial resources to the prosecution of the Action.  Moreover, Plaintiff and Class Counsel have vigorously and competently represented the Settlement Participants' interests in

the Action.  Based upon the above factors, the Parties' class action settlement satisfied Rule 23(a), permitting the Parties to proceed on to Rule 23(b)(3).

      **B.**    **The Settlement Class Satisfies the Requisite Rule 23(b)(3) Factors.**

This putative settlement class also satisfies Rule 23(b)(3)'s two requirements: (i) common questions of law or fact must "predominate over any questions affecting only individual members"; and (ii) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy."  FED. R. CIV. P. 23(b)(3).

      **1.**    **Predominance.**

Here, common legal and alleged factual issues predominate over individualized issues, and resolution of the common issues for 308 Settlement Participants in a single, coordinated proceeding is superior to 308 individual lawsuits addressing the same legal and factual issues. With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs, Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all Settlement Participants in a single common judgment.  *See In re Checking Account Overdraft Litig.*, 2012 WL 4173458, at *3 (S.D. Fla. Sept. 19, 2012).

2.     **Superiority.**

As discussed below, Plaintiff's contention is that each of the four superiority factors favors class certification.  First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions."  This requirement is intended to protect against classification where individual class members have a strong interest in "individually controlling" the litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts.  *See* William Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions*, at § 4:69.  This is not such a lawsuit.  Here, the value of the off-the-clock claims is small on an individual basis, and the legal issues surrounding Plaintiff's claims do not elicit much emotion.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members.  Here, no related litigation exists.  Third, Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum."  FED. R. CIV. P. 23(b)(3)(C). Here, concentration of all claims in this Court is desirable because the call center at issue is located in this district.  Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action."  FED. R. CIV. P. 23(b)(3)(D).  This requirement is automatically satisfied when a case is being certified for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In sum, all of Rule 23's requirements are met for the purposes of certifying a settlement class.

13

C.   **The Settlement Is Fair, Reasonable, and Adequate.**

In evaluating a class action settlement to determine if it is fair, reasonable, and adequate, courts in the Eleventh Circuit consider the six factors set forth in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The *Bennett* factors are (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.  *See id.*  Here, all of the *Bennett* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of final approval.

1.   **The Likelihood of Success at Trial.**

Although Plaintiff believes his case is strong, it is not without risk.  A trial on the merits would involve significant risk as to both liability and damages.  While Plaintiff was confident that he could show that Defendant violated the overtime provisions of the FLSA and also failed to pay Class/Collective Members for all straight time worked, Defendant indicated that it intended to raise a number of defenses.

For example, Defendant argued that many of its witnesses would dispute Luker's allegations and would attest that, as Process Executives (1) they followed Cognizant's time-recording policy and were paid for all hours worked, (2) they routinely began work after their scheduled start times and were paid for all hours worked, (3) their supervisors lacked knowledge of any off-the-clock work, and/or (4) any allegedly off-the-clock work (e.g., time spent logging on to their computers) took only seconds.  Defendant argued that each of these facts is a barrier to liability for individual plaintiffs.  Finally, Defendant also argued that many

of the tasks that Luker alleges that Process Executives perform—e.g., picking up and putting on their headsets and logging in to their computers—are not, in fact, compensable work.

While Plaintiff believes that he could ultimately defeat Defendant's defenses and establish liability, this would require significant factual development and favorable outcomes at trial and on appeal. The proposed settlement alleviates this uncertainty. To avoid these risks, it was reasonable for Plaintiff to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for members of the Settlement Class. *See, Bennett v. Behring Corp.*, 76 F.R.D. 343, 349–50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984). This factor weighs in favor of final approval.

### 2/3.    The Range of Possible Recovery and Range at Which Settlement Is Fair.

The relief sought in the Settlement is reasonable and within the range of remedies permitted by law. Under the settlement, the average payment to Settlement Participants is $562.16. *See* Schwartz Decl., Ex. B, ¶ 17. "While Class Members' damages could exceed the amount provided in the Settlement, the Plaintiffs have no guarantee they will prevail." *Waters v. Cook's Pest Control, Inc*., 2012 WL 2923542, at *13 (N.D. Ala. July 17, 2012); *see also  Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re: Newbridge Networks Secs. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a *potential* recovery . . . seems to be within the targeted range of reasonableness").

In sum, when the settlement here is taken as a whole, the relief proposed is fair, adequate, and reasonable when compared to the range of possible recovery in this action.

**4.      Litigation Through Trial Would Be Complex, Costly, and Long.**

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Participants (at best), and might have resulted in no relief at all.  Specifically, the parties likely would have filed cross-motions for summary judgment on the legal issue regarding the legality of Defendant's pay policy with respect to off-the-clock compensation. If the Court had denied the motions, a fact-intensive trial would have been necessary to determine whether Plaintiffs were paid in compliance with the FLSA and/or all of their straight time common-law unpaid wage claims.  Preparing for and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources.  Any judgment would likely be appealed, extending the duration of the litigation. Complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493.  By entering into a settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation.

The settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.  Therefore, the fourth *Bennett* factor weighs in favor of final approval.

16

**5.      There Is No Opposition to the Settlement.**

As set forth previously, notice was mailed to the class members and their reaction was 100% positive.  In fact, there were zero objections and zero requests for exclusion.  *See* Schwartz Decl., ¶¶ 14–16.  *See generally* Schwartz Decl., Ex. B.  And, of course, Plaintiff and his counsel support the settlement.  *See generally* Decls. of counsel, Brandon J. Hill, Luis A. Cabassa, and Chad A. Justice.

Lack of objections is a significant factor in determining whether the proposed class settlement is reasonable to the class as a whole.  *Allapattah Servs. v. Exxon Corp*., 2006 U.S. Dist. Lexis 88829 (S.D. Fla. 2006); *see also, Wal-Mart Stores, Inc. v. Visa USA, Inc*., 396 F.3d 96, 118 (2d Cir. 2005) (noting that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement"); *Camp v. City of Pelham*, 2014 U.S. Dist. Lexis 60496, at *11 (N.D. Ala. May 1, 2014) (the fact that no objections were received "points to the reasonableness of [the] proposed settlement and supports its approval" (citations omitted)); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (stressing that "[i]t has repeatedly been held that 'one indication of the fairness of a settlement is the lack of or small number of objections'").  Here, there were no objections to the settlement submitted.  Further, the 100% participation rate among the class indicates strong acceptance of the settlement terms among the settlement class.  Therefore, this critical factor weighs heavily in favor of final Court approval of the settlement.

**6.      The Stage of Proceedings, and Manner in Which Settlement Was Reached Through the Use of a Mediator, Supports Final Approval.**

The parties have exchanged enough information to recommend settlement.  In evaluating this factor, courts examine "whether counsel had an adequate appreciation of the

merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). Defendant produced (or Plaintiffs' counsel already had) documents pertaining to its corporate policies, payroll records, and class-wide payroll and workweek information, prior to mediation.

Additionally, the settlement is the product of arm's-length negotiations that were overseen by an experienced and impartial mediator who was approved by the Court. (Doc. 21). This also weighs in favor of final approval. *See Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

The proposed settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the Parties and their counsel. The Parties participated in mediation with Mr. Hughes during an all-day mediation at great expense to both sides. The Parties and counsel were well informed of the potential strengths and weaknesses of their positions and conducted good-faith negotiations in an effort to avoid costly and protracted litigation. Attorneys' fees were not discussed until the class members' recovery was decided upon.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. *See generally* Decls. of Luis A.

Cabassa, Brandon J. Hill, and Chad Justice; *see also Pierre-Val*, 2015 U.S. Dist. LEXIS at *2

("courts should give weight to the parties' consensual decision to settle class action cases,

because they and their counsel are in unique positions to assess the potential risks").  Where

there "is no evidence of any kind that the parties or their counsel have colluded or otherwise

acted in bad faith in arriving at the terms of the proposed settlement . . . counsel's informed

recommendation of the agreement is persuasive that approval is appropriate."  *Strube v. Am.*

*Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

Based on these circumstances, the parties were well equipped to evaluate the strengths

and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in

relatively early stages of discovery" where parties had exchanged extensive information

regarding the defendant's time and pay practices and where counsels' negotiations, while

"cooperative," had "been in no way collusive"); *see also Khait*, 2010 WL 2025106, at *4-5

(approving settlement where the parties exchanged payroll and time data and policies and

procedures and where plaintiffs interviewed numerous opt-ins regarding their duties and

hours worked).  This factor also weighs in favor of final approval.

In sum, based upon the foregoing, the Parties respectfully ask this Motion be granted,

and that the Court enter the attached proposed Order (*see* Ex. A) granting final approval of

their class action settlement under Rule 23 as to the Plaintiffs' common-law unpaid wage

claims.

## IV.    Pursuant to *Lynn's Foods*, the Court Should Also Approve the Parties' FLSA <u>Portion of the Settlement Agreement.</u>

It is well accepted that an FLSA settlement not supervised by the U.S. Department of

Labor should be approved by a court if it is a fair and reasonable resolution of a bona fide

dispute.  *See Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor*, 679 F.2d 1350,

1355-55 (11th Cir. 1982).  If an FLSA settlement reflects "a reasonable compromise over

issues," the court may approve the settlement "in order to promote the policy of encouraging

settlement of litigation." *Id.* at 1354.  In determining whether the settlement is a fair and

reasonable resolution, the Florida district court typically adopts the following factors used in

approving the settlement of class actions:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity,
> expense, and likely duration of the litigation; (3) the stage of the proceedings
> and the amount of discovery completed; (4) the probability of plaintiff's success
> on the merits; (5) the range of possible recovery; and (6) the opinions of
> counsel.

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010) (citing *Leverso v. South

Trust Bank of Ala., Nat.'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).  As is discussed

below, each of these factors is satisfied.

### A.    There Is No Fraud or Collusion Behind the Settlement.

Courts have found no fraud or collusion where both parties were represented by

counsel, and the amount to be paid to plaintiffs seemed fair.  *See Bonilla v. Shiner's Car Wash*,

2014 U.S. Dist. LEXIS 66297, at * 5 (M.D. Fla. 2014).  Here, each party was independently

represented by counsel with substantial experience litigating FLSA claims.  Counsel

vigorously advocated on behalf of their respective clients, and the settlement was reached with

the assistance of a third-party mediator.  There was no fraud or collusion behind the settlement.

### B.    The Complexity, Expense, and Length of Future Litigation
Militate in Favor of the Settlement.

Continuing to litigate the claims the Parties have resolved and for which the parties

now seek Court approval would require both sides to incur significant additional fees at trial.

Both sides would bear some risk if the claims that have been settled proceeded to trial, and on appeal. Plaintiff and the Settlement Participants would risk recovering nothing, and Defendant would risk the possibility of an adverse judgment and fee award. The losing side at trial would likely appeal, further lengthening the litigation. It is in the best interests of all the Parties to settle — rather than continuing to litigate — this matter. *See Pacheco v. JHM Enterprises, Inc.* 2006 WL 948058 at *2 (M.D. Fla. Apr. 12, 2006) ("[T]he Court is aware, as the parties must also be, that a 'settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'" (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995).

### C.    The Stage of the Litigation Weighs in Favor of Approval of the Settlement.

Each side was aware of the other's factual and legal arguments, along with the evidence supporting same, when the proposed settlement was reached. The Parties were in a position to thoroughly evaluate the merits of their respective claims and defenses and the costs of continuing to litigate when the matter was resolved. Furthermore, the parties resolved this case with the assistance of an experienced, neutral third-party mediator.

### D.    Plaintiffs' Probability of Success on the Merits Is Uncertain.

As discussed above, Plaintiffs' probability of success on the merits is not a certainty. Defendant contends that Plaintiff and the Settlement Participants were properly compensated for all hours worked. But, settlement mitigates against the risk that Plaintiff and Settlement Participants might recover nothing if they proceeded to trial, while Defendant can avoid incurring more fees and costs while also obtaining an outcome certain.

### E.    The Settlement Is Within the Reasonable Range of Recovery.

Under the terms of the Settlement, Settlement Participants will receive between $25 and $2,884.45 based on how many weeks they worked during the class period and, most importantly, how many of those weeks they worked overtime.  Given that the potential recovery in this action could be zero based on Defendant's defenses, the payments to the Settlement Participants are reasonable when compared to the range of possible recovery in this Action.

### F.    The Parties Weighed the Opinions of Counsel in Deciding Whether to Settle.

The Parties agree they weighed the opinions of their respective counsel in deciding whether to settle and used the services of a third-party mediator in assessing the strengths and weaknesses of their respective positions.  This also weighs in favor approving the settlement. *See Dees*, 706 F. Supp. 2d at 1241 ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable."). Further, the settlement does not require Settlement Participants to agree to any terms, such as confidentiality, non-participation in other claims, or a prospective waiver of any rights, that this Court has previously ruled to be impermissible in the context of an FLSA settlement.  *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346 (M.D. Fla. 2010).

In sum, for all of the above reasons, the Settlement constitutes a fair and reasonable resolution of a bona fide dispute.

### V.    The Attorneys' Fees to Be Paid as Part of the Settlement Are Fair and Reasonable.

Finally, the Settling Parties agree that the amount allocated to Plaintiffs' counsel for attorneys' fees ($96,666), plus reasonable litigation costs ($10,133.48), is fair and reasonable.

22

The Settling Parties advise the Court that the attorneys' fees and costs to be paid by Defendant under the Agreement are not based upon the amounts claimed to be owed to each Settling Plaintiff, such that there is no correlation between the amount of consideration to be paid to the Settling Plaintiffs and the attorneys' fees and costs to be paid by Defendant. Rather, the attorneys' fees and costs in this case were analyzed and reviewed in addition to — and completely separate from — the specific amounts claimed by each of the Plaintiffs. As explained in *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009):

> [T]he plaintiff's attorney's fee was agreed upon separately and without regard to the amount paid to the plaintiff, then unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel. However, if the parties can only agree as to the amount to be paid to the plaintiff, the Court will continue the practice of determining a reasonable fee using the lodestar approach.

751 F. Supp. 2d at 1228; *see also Dees*, 706 F. Supp. 2d at 1243 (quoting *Bonetti*).

Such is the case here. The attorneys' fees and costs allocated to Plaintiff's counsel were negotiated separately from the amount to be paid to Plaintiffs and without regard to the amount that Defendant had agreed to pay to the Settling Plaintiffs. As such, the recovery by the Plaintiffs was not adversely affected by the amount of the attorneys' fees and costs paid to their counsel.

## VI.    <u>CONCLUSION.</u>

For all of above reasons, Plaintiff respectfully requests that the Court grant final approval of the settlement and enter the Proposed Order attached as Exhibit A.

## LOCAL RULE 3.01(g) COMPLIANCE

Pursuant to Local Rule 3.01(g), Counsel for Plaintiff conferred with counsel for the Defendant as to the relief sought in this Motion.  Defendant does <u>not</u> object to this Motion.

DATED this 12th day of June, 2020.

Respectfully submitted,

/s/ *Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar Number: 053643
**BRANDON J. HILL**
Florida Bar No. 0037061
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Direct: 813-337-7992
Main: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
**Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of June, 2020, the foregoing was electronically filed using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Brandon J. Hill*
**BRANDON J. HILL**

DB1/ 114382067.5

24